IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE WHITE, pro se, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SCHOOL DISTRICT OF | : | |
| PHILADELPHIA, et al., | : | |
| Defendants. | : | NO. 05-0092 |

**MEMORANDUM AND ORDER**

GENE E.K. PRATTER, J.                                                                                       JUNE 19, 2008

      This action arose after the School District of Philadelphia ("School District") refused to reinstate Tyrone White to his position as a general cleaner following his absence from work for work-related injuries. The School District maintains that it did not reinstate Mr. White after his absence because he did not take required drug and tuberculosis tests. Mr. White asserts that because of his race and a perceived disability, the School District discriminated against him in violation of the Rehabilitation Act, 29 U.S.C. §§ 793, *et seq*.; the Pennsylvania Human Relations Act, 43 P.S. § 955(a); 42 U.S.C. § 1981; and 42 U.S.C. § 1983. Presently before the Court is the School District's Motion for Summary Judgment, to which Mr. White has responded. Because certain of Mr. White's claims are untimely and the remainder fail due to a complete lack of evidence, the Court will grant summary judgment for the School District.

**I. LEGAL STANDARD**

      Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

1

judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" only if it could affect the result of the suit under governing law. Id.

Evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 217, 322 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record. Celotex, 477 U.S. at 322-23. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 642 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

## II. BACKGROUND

### A. The Court's Procedure

To describe the background of this case, the Court sets out those facts of record that are undisputed. Moreover, they are construed in the light most favorable to Mr. White, the non-moving party. The Court must disregard those factual allegations that Mr. White makes without any evidentiary support from the record. See, Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986); Jones v. United Parcel Service, 214 F.3d 402, 407 (3d Cir. 2000) (requiring more than "unsupported allegations" to defeat summary judgment). The following factual recitation separately notes those instances where Mr. White disputes factual contentions made by Defendant, but provides no evidentiary basis from the record for those disputes, and, in that case, Defendant's factual contentions are treated as undisputed. See, Blaylock v. City of Philadelphia, 504 F.3d 405, 413 (3d Cir. 2007) (citing Anderson v. Liberty Lobby. Inc., 477 U.S. 242 (1986)) (when the record contradicts a party's description of the facts, it does not create a genuine dispute). The Court has accepted as true all other factual contentions made by Mr. White and construed them in the light most favorable to him. Moreover, the Court has made every appropriate indulgence of Mr. White in light of his pro se status throughout the great length of time this case has been pending.

**B. Factual History**

The School District hired Mr. White in 1997 as a as a general cleaner. After a short training period, he began performing basic maintenance and cleaning duties in the School District's facilities. During his employment with the School District, Mr. White was a member of a bargaining unit of School District employees represented by Local 1201, National Conference of Firemen and Oilers, Affiliated with Service Employees International Union, AFL-

CIO. He continued working as a general cleaner for the School District until July 20, 2000, when he developed a work-related skin rash.

On July 21, 2000, Mr. White filed a workers' compensation claim as a result of the skin condition he had contracted in the course and scope of his duties as a general cleaner. He was represented by private counsel, Robert Huber, Esquire, in connection with the workers' compensation claim. On September 25, 2000, Mr. White was diagnosed with acute depression and, following a psychiatric evaluation on or about October 2, 2000, he was declared unfit for work due to the depression, which allegedly developed as a result of Mr. White's anxiety over the change in his skin pigmentation due to his contact dermatitis.

Mr. White's workers' compensation claim remained contested until on or about May 7, 2004. At that point, the parties entered into a Stipulation of Facts agreeing that Mr. White's compensable work-related injury was only his contact dermatitis and that he was disabled from work as a result of that injury from July 20, 2000 until March 12, 2001.

In January 2001, Mr. White received a notice from Deborah Jenkins, a School District employee, advising him that his family medical leave period had expired and warning him that if he did not return to work he would lose his job. On March 12, 2001, Mr. White went to the School District's employee administration offices with two doctors' notes, each declaring that he was fully recovered and able to return to work without restriction. One note pertained to his recovery from his skin condition, and the other pertained to his depression.

Mr. White did not have an appointment with the School District, but believed that he could show up at the employee administration offices with his doctors' notes and recommence his job duties at 2:00 p.m. that same afternoon. School District personnel informed him that he

4

could not report to work without first taking a tuberculosis test and a urine test for drugs.  Mr. White went from the employee administration offices to the administration offices of the School District attorney who was handling his workers' compensation claim.  Mr. White told the attorney that he was ready to return to work.  He testified at his deposition that the School District attorney asked him to sign a form, which, even though he never saw or read the form, Mr. White believed "probably" was a relinquishment of his workers' compensation claim.  See, Motion, Ex. A at 84:1 - 85:3.  Mr. White testified at his deposition that he was denied the right to report to work on March 12, 2001 because he refused to sign the form.  Id. at 92:14-22.  He also testified that he spoke with his private attorney the same day and advised him that the School District would not allow him to return to work.  Id. at 93:1-7.

Later in March 2001, Mr. White went to the offices of School District employee Deborah Jenkins.  He testified that Ms. Jenkins told him that he no longer had a job with the School District.  Id. at 101:2-18, 102:3-8.

On May 14, 2001, Mr. White filed a formal charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC").  The administrative agency charge was dual filed with the Pennsylvania Human Relationship Commission ("PHRC") in accordance with Title VII deferral procedures and the Pennsylvania Human Relations Act, 43 P.S. §§ 955, *et seq.* ("PHRA").  Mr. White asserted that he had been subjected to discrimination and harassment based on his race.  In his complaint, Mr. White also claimed that "Respondent [School District] will not allow me to return to work," and that "I am being discriminated against because of my disability or perceived disability."  Motion, Ex. C.

Mr. White testified at his deposition that as of May 14, 2001, he was aware that the

School District did not intend to return him to work. He also testified that he has no evidence that anyone from the School District "perceived" or "regarded" him as being disabled. Motion, Ex. A at 159:16-19. Further, to the extent that his EEOC charge alleged racial discrimination, Mr. White testified that he does not believe race was a factor in the School District's decision not to return him to his former position as a general cleaner. Id. at 150:1-151:24.

On September 12, 2001, the EEOC sent Mr. White a written notice advising him that it was dismissing his May 14, 2001 EEOC charge. The notice informed Mr. White that he had a right to file a lawsuit against the School District based on his claims of discimination. The notice stated: "Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; otherwise your right to sue based on this charge will be lost." Motion, Ex. C (emphasis in original). The PHRC also closed its investigation and issued a Notice of Complainant's Rights (Right to Sue). Sec. Amend. Compl. ¶ 9.

In connection with Mr. White's then-pending workers' compensation claim, Mr. White was examined by Dr. Paul Gross on February 14, 2003 and by Dr. Wolfram Rieger on March 5, 2003. Dr. Gross prepared a written report relating the Mr. White's July 21, 2000 skin rash and its resolution. Motion, Ex. B at White-16. Dr. Rieger prepared a written report relating to Mr. White's claim that he developed depression and anxiety as a result of a loss of skin pigmentation due to his contact dermatitis. Dr. Rieger concluded that Mr. White did not suffer from depression and was fully fit for work, without restriction. He also stated, "I do not believe that [Mr. White] sustained a psychological injury as a result of his contact dermatitis, which healed promptly." Motion, Ex. B at White-17.

On March 24, 2004, Mr. White filed a second administrative charge with the EEOC and

the PHRC. He alleged that the School District's failure to return him to work from March 2001 through March 2004 was due to illegal discrimination for a "perceived disability" and in retaliation for his having filed the original May 14, 2001 EEOC charge. See, Motion, Ex. B at White-6. On December 3, 2004, the EEOC sent Mr. White a written notice advising him that it was dismissing his March 24, 2004 EEOC charge. The notice informed Mr. White that he had a right to file a lawsuit against the School District based on his claims of discrimination. The notice stated: "Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; otherwise your right to sue based on this charge will be lost." Motion, Ex. B at White-6 (emphasis in original).

Mr. White did not file a lawsuit based on the claims set forth in his May 14, 2001 EEOC charge or his March 24, 2004 EEOC charge until January 10, 2005, when he commenced this suit.

**C. Procedural History**

After Mr. White filed his initial complaint, he requested that the Court appoint counsel to represent him in the proceedings. On April 28, 2005, the Court granted Mr. White's request for the appointment of counsel, and on October 17, 2005 Lorrie McKinley, Esquire, was appointed to represent Mr. White. Ms. McKinley prepared and filed a second amended complaint on April 5, 2006.

During a settlement conference in September 2006, Mr. White informed the magistrate judge that he did not wish for Ms. McKinley to continue representing him in this matter. He said that he intended to seek private counsel. After Ms. McKinley offered to continue representing

him, Mr. White thanked her for her time and reiterated that he intended to seek private counsel. Ms. McKinley withdrew as counsel in October 2006. Since that time, Mr. White has not hired counsel.

On March 14, 2008, this Court held a hearing with Mr. White and counsel for the School District. During that proceeding, the parties discussed a settlement offer. With both parties' approval and outside the presence of the School District's counsel, the Court provided neutral responses about the settlement offer and how provisions in the agreement could operate from a legal perspective. After Mr. White expressed his disinclination to accept the settlement offer, the Court explained to him the importance of responding to the School District's summary judgment motion and generally how to do so. The parties discussed the settlement offer outside the Court's presence, and, ultimately, Mr. White rejected the offer. Mr. White filed a response to the School District's summary judgment motion the following month.

### III.   DISCUSSION

#### A. Rehabilitation Act Claims (Counts I and III)

Pennsylvania's two-year statute of limitations for personal injury claims governs claims made in federal court under the Rehabilitation Act. Barclay v. Amtrak, 343 F. Supp. 2d 429, 433 (E.D. Pa. 2004). See also, DiFrancesco v. Aramark Corp., 2006 U.S. Dist. LEXIS 5312, at *5-6 (3d Cir. March 1, 2006).

The record is undisputed that Mr. White filed a claim of disability discrimination with the EEOC on May 14, 2001. At that time, he alleged that the School District would not permit him to return to work despite doctors' notes releasing him to return without restriction. Mr. White

continued the charge by stating, "I am being discriminated against because of my disability or perceived disability." Motion, Ex. C. This is the same basis asserted in support of Mr. White's allegation of a violation of his rights under the Rehabilitation Act. In his complaint, Mr. White asserts discrimination due to the School District's refusal "to permit Plaintiff to return to work in a position for which he was qualified, with or without accommodation, from March 12, 2001 through the present." Sec. Amend. Compl. ¶ 68.

The EEOC issued a clear and unequivocal notice to Mr. White on September 12, 2001 advising him of his right to file a lawsuit based on the School District's failure to reinstate him as a general cleaner. The "Dismissal and Notice of Rights" warmed Mr. White in bold, capital lettering that his right to sue based on his 2001 accusations would be "lost" unless he filed a lawsuit within ninety days of his receipt of the notice. Motion, Ex. C. However, Mr. White did not file this lawsuit until January 10, 2005, more than three and a half years after he received the EEOC notice and almost four years after the alleged discriminatory conduct occurred. Accordingly, Mr. White failed to meet Pennsylvania's two-year statute of limitations for his Rehabilitation Act claims for discrimination, and those claims must be dismissed.

**B. Rehabilitation Act Retaliation Claim (Count V)**

Mr. White asserts that the School District retaliated against him for filing his May 14, 2001 EEOC discrimination charge. The retaliation alleged in Mr. White's March 24, 2004 EEOC charge and his present complaint is based on the School District's continued failure to reinstate Mr. White as a general cleaner.

The School District asserts in its motion that the School District failure to return Mr.

9

White to work on March 12, 2001 and any continued failure to return him to work do not constitute separate actions taken by the School District.  However, Mr. White's March 24, 2004 EEOC charge seems to seek to extend to March 5, 2003 the School District's conduct of failing to reinstate Mr. White.  On March 5, 2003, Mr. White was examined by Dr. Rieger who declared Mr. White no longer (if ever) suffering from a psychological disability and, thus, was fit to return to work without restrictions of any kind.  Taking the evidence in the light most favorable to Mr. White and assuming that the School District acted in March 2003 to again deny reinstatement, there is no evidence in the record reflecting any action taken by the School District after, at the very latest, March 25, 2003.  It appears that on that date the School District's carrier in Mr. White's workers' compensation case received Dr. Rieger's written report and the School District again did not reinstate Mr. White.

A claimant litigating pursuant to the Rehabilitation Act is required to exhaust all administrative agency remedies in accordance with Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, before filing suit.  Spence v. Straw, 54 F.3d 196, 201 (3d Cir. 1995).  A claimant has 300 days from the date of the last adverse employment decision to file a claim with the EEOC in a deferral state such as Pennsylvania.  42 U.S.C. § 2000e-5(e)(1); Watson v. Easton Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000).  Considering the complaint in the most generous manner, the last adverse employment decision occurred on March 23, 2003.  However, Mr. White waited until March 24, 2004, more than 300 days later, to file his EEOC charge alleging retaliation.  Accordingly, Mr. White's retaliation claim must be dismissed.

**C. Federal Claims (Counts VII and VIII)**

Mr. White has asserted a § 1981 retaliation claim and a § 1983 claim for violations

arising from unlawful and unconstitutional discrimination and retaliation.

### 1. Statute of Limitations

The statute of limitations for § 1981 and § 1983 claims is Pennsylvania's two year statute of limitations for personal injury actions. See, Wilson v. Garcia, 471 U.S. 261, 277 (1985); Goodman v. Lukens Steel Co., 482 U.S. 656, 661 (1987); 42 Pa.C.S. § 5524. See also, Debiec v. Cabot Corp., 352 F.3d 117, 128 (3d Cir. 2003) (noting that Pennsylvania has a two year statute of limitations for personal injury and wrongful death actions). Even though Pennsylvania law controls the applicable statute of limitations, federal law determines when a cause of action under §1981 or §1983 accrues. Elliott, Reihner, Siedzikowski and Egan, P.C. v. The Pennsylvania Employees Benefit Trust Fund, 161 F. Supp. 2d 413, 420 (E.D. Pa. 2001). Such a claim accrues on the date the plaintiff knew or had reason to know of the injury which is the basis for his action. Sameric Corp. v. City of Philadelphia, 142 F.2d 582, 599 (3d Cir. 1998); De Botton v. Marple Township, 689 F. Supp. 477, 480 (E.D. Pa. 1988). More generally, a claim accrues in a federal cause of action upon plaintiff's awareness of actual injury, not upon awareness that the injury constitutes a legal wrong. See, Oschiver v. Levin, Fishbine, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994).

On March 12, 2001, the School District refused to reinstate Mr. White as a general cleaner, so, at that time, Mr. White became aware of the injury of which he now complains. Mr. White commenced this action on January 10, 2005. Accordingly, any portion of Mr. White's § 1983 claim based on the School District's failure to reinstate him on March 12, 2001 is barred under Pennsylvania's strict two-year statute of limitations.

However, Mr. White also asserts a retaliation claim based on acts alleged to have

occurred as late as March 25, 2003. Because such acts allegedly occurred less than two years prior to the filing of this action, § 1981 and § 1983 retaliation claims based on the School District's actions in March 2003 are not barred by the applicable statute of limitations.

**2. § 1981 and § 1983 Retaliation Claims**

In order to make out a *prima facie* case of retaliation, an employee must demonstrate that (1) he engaged in a protected activity as defined by the Act; (2) his employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link between the protected activity and the adverse employment action exists. Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001).

It is undisputed that Mr. White engaged in a protected act when he filed an administrative agency charge of employment discrimination on May 14, 2001. He alleged that the School District wrongly failed to return him to work because of his race and/or perceived disability. However, even taking the evidence in the light most favorable to Mr. White, there is no evidence that the School District engaged in any retaliatory conduct between May 14, 2001 when it originally denied reinstatement and March 25, 2003 when it received a second doctor's letter clearing Mr. White for work and again failed to reinstate him as a general cleaner.

The main factors in determining a causal link between a protected activity and an adverse employment action are timing and a pattern of antagonism between the two. Garabedian v. Lone Star Steakhouse & Saloon, 2007 U.S. Dist. LEXIS 44759, *6 (E.D. Pa. June 20, 2007). Mr. White has presented no evidence that the School District engaged in any antagonistic behavior toward him between the time he first filed a charge with the EEOC in 2001 and when the School

District again failed to reinstate him in 2003.

Further, there is simply no case law supporting the argument that the timing of an adverse employment action taking place nearly three years after a protected activity provides a sufficient causal link to survive summary judgment. Even a short period of time between a protected activity and an adverse employment action is not itself sufficient to establish a causal link in a vacuum, although, in such a case, an abbreviated time period can factor into the causal inference. Garabedian, 2007 U.S. Dist. LEXIS 44759 at *8 ("[a] short period of time...factors into the causal inference") (citing Fasold v. Justice, 409 F.3d 178, 189-90 (3d Cir. 2005) (discussing a period less than one month and noting that "a short period of time" may provide the evidentiary basis of an inference of retaliation)); Zelinski v. State Police, 108 Fed. Appx. 700, 706 (3d Cir. 2004) (stating two months is "much more 'unusually suggestive' than a period of ten months); Silvestre v. Sere Care, Inc., 2000 U.S. Dis. LEXIS 25267 *26 (E.D. Pa. Dec. 30, 2002) (noting that two months "appears to be a relatively short time" between the protected activity and adverse action). A three-year period during which Mr. White suffered no antagonism from the School District simply cannot support a retaliation claim under § 1981 or § 1983.

### 3. § 1983 and the Equal Protection Clause

Mr. White also asserts a § 1983 violation of his equal protection rights as protected by the Fourteenth Amendment. To support an equal protection claim, Mr. White must do more than simply allege invidious discrimination based on race or disability. To support a claim for violations of equal protection rights, "[a] plaintiff must at least allege and identify the actual existence of similarly situated persons who have been treated differently and that the government

has singled out plaintiff alone for different treatment." Marcavage v. City of Philadelphia, 2006 U.S. Dist. LEXIS 55643, at 18* (E.D. Pa. Aug. 3, 2006) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Mr. White has failed to identify any similarly situated individual whom the School District has treated differently.  Accordingly, any claim based on alleged violations of his equal protection rights must fail.

**D. Claims under the Pennsylvania Human Relations Act (Counts II, IV and VI)**

Mr. White has asserted three claims pursuant to the Pennsylvania Human Relations Act ("PHRA") for discrimination: failure to accommodate, failure to engage in the interactive process, and retaliation.  The School District argues that Mr. White's claims under the PHRA are time-barred.  The School District asserts that Mr. White failed to file suit within Pennsylvania's two-year statute of limitations for claims under the PHRA, and that he failed to file his administrative agency charge with the PHRC within 180-days of any alleged discriminatory act.

**1. Statute of Limitations**

The School District argues that any PHRA claims based on Mr. White's first administrative charge must fail because Mr. White did not file such claims within Pennsylvania's two-year statute of limitations.  The PHRA establishes a two-year period within which a complainant must file any claim under the Act.  The statute of limitations commences to run on the date on which the PHRC notifies the complainant that it has closed its administrative files. 43 P.S. § 962(c)(2).  See, e.g., Bailey v. Storlazzi, 729 A.2d 1206, 1209 n.1 (Pa. 1999) ("[T]he complainant has two years from the Commission's date of notice to file an action....")

The PHRC closed the file for Mr. White's May 14, 2001 administrative charge in September 2001 and gave Mr. White notice of the closure. However, Mr. White did not file this lawsuit until January 10, 2005, more than three years after the closure of his first PHRC file. Accordingly, the Court must dismiss any PHRA claim based on Mr. White's first administrative charge.

### 2. 180-Day Filing Requirement

The PHRA requires that a complainant file an administrative complaint with the PHRC within 180 days of the alleged discriminatory conduct. 43 P.S. § 959(h). "Pennsylvania Courts have strictly interpreted this requirement." Black v. SEPTA, 2006 U.S. Dist. LEXIS 67792, at *8 (E.D. Pa. Sept. 21, 2006) (citing Vincent v. Fuller Co., 616 A.2d 969, 974 (Pa. 1992) ("[P]ersons with claims that are cognizable under the Human Rights Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act.")).

As noted above, Mr. White's March 24, 2004 EEOC/PHRC charge seeks to extend to at least March 2003 the School District's conduct of failing to reinstate Mr. White. However, there is no evidence in the record reflecting any action taken by the School District after, at the very latest, March 25, 2003, when the School District's carrier in Mr. White's workers' compensation case received Dr. Rieger's written report. Accordingly, the filing of Mr. White's second administrative charge on March 24, 2004 occurred more than 180 days from the last possible event reflected in the record, and any claim based on such administrative charge must fail.

IV. **CONCLUSION**

From the periodic court appearances by Mr. White, as well as from a review of his filings in this case,[1] the Court is keenly aware of Mr. White's frustrations with his employment experiences, his health experiences and, now, with his experiences in regulatory procedures and litigation. These life experiences can be taxing for a great many people, and unfortunately so. The Court is also aware that the defendant School District has made unusual efforts to try to reduce – if not alleviate altogether – some of those frustrations, but to no ultimate avail. Notwithstanding the good faith efforts of all concerned, there comes a time when it must be acknowledged that the legal system and court procedures cannot respond as desired by a litigant to all of the litigant's concerns, frustrations, and preferences. That time has now come in this case. For the reasons set forth above, the Court must grant the School District's motion. An appropriate Order consistent with this Memorandum follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[1] The Court again compliments Mr. White on his demonstrated courtesy and earnest efforts to comply with the modified procedures used for this case. He comported himself ably.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE WHITE, <u>pro se</u>, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| SCHOOL DISTRICT OF | : | |
| PHILADELPHIA, <u>et al.</u>, | : | |
|     Defendants. | : | NO. 05-0092 |

**<u>ORDER</u>**

AND NOW this 19th day of June 2008, upon consideration of Defendant School District of Philadelphia's Motion for Summary Judgment (Doc. No. 66), Plaintiff White's Response (Doc. No. 76) and Defendant's Reply (Doc. No. 78), it is HEREBY ORDERED that the Motion is GRANTED.

The Clerk of Court is instructed to CLOSE this case for all purposes, including statistics.

BY THE COURT:

  /s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

17